UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN BALDWIN,<br>    Petitioner, | :<br>:<br>: | CIVIL CASE NO.<br>3:03-CV-980 (JCH) |
| v. | :<br>:<br>:<br>: | |
| UNITED STATES OF AMERICA,<br>    Respondent. | :<br>: | OCTOBER 15, 2015 |

**RULING RE:  MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE (CIV. DOC. NO. 1)**

**I.    INTRODUCTION**

On July 1, 2015, the court granted in part and denied in part petitioner Ryan Baldwin's ("Baldwin") Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. No. 1) ("Mot. to Vacate").  See Ruling (Doc. No. 10) ("Habeas Ruling").  Specifically, the court denied Baldwin's claims that his counsel was constitutionally ineffective for failing to challenge drug quantity at sentencing and for failing to file an Anders brief.  See id. at 13.  The court also denied Baldwin's claim that the court improperly enhanced his sentence.  Id.  However, the court granted Baldwin's request for an evidentiary hearing to determine whether: (1) Baldwin's counsel timely informed him of comments the court made with regard to counsel's decision not to contest drug quantity; (2) Baldwin directly requested that his counsel file an appeal; and (3) whether Baldwin's counsel adequately consulted with Baldwin regarding his appeal rights.  Id.  The court held an evidentiary hearing to resolve these issues on July 29-30, 2015.

## II. FINDINGS OF FACT

The court has already discussed the factual background related to Baldwin's underlying offense, conviction, and sentencing in the Habeas Ruling. See id. at 2. Accordingly, the court incorporates that background here. The court sets forth its findings of fact related to the three factual disputes that were the foci of the evidentiary hearing.

### A. Whether counsel timely informed Baldwin of the court's comments

In support of his Motion to Vacate, Baldwin argued that his counsel advised him against challenging the drug quantity at sentencing because of findings that the court had adopted during the sentencing of one of Baldwin's co-conspirators. See Petitioner's Supplemental Memorandum in Support of Amended Motion to Vacate, Set Aside, or Correct Sentence 2 (Crim. Doc. No. 738) ("Supplemental Mem. in Supp."). However, he also argued that this advice was incomplete because his counsel did not – until it was too late to contest the quantity at sentencing – inform him of statements the court made that it had not reached a final determination as to the drug quantity in Baldwin's case. See id.; id. Ex. A 2-3.

At the time the court issued its Habeas Ruling, the record was unclear as to Baldwin's contention that his counsel did not fully inform him of the court's views in a timely manner. On the one hand, the records of Baldwin's counsel indicated that Baldwin was timely informed of the court's position. The status conference in which the court told Baldwin's counsel that the court had not yet made a final determination as to Baldwin's drug quantity was held on May 21, 2002, seven days before Baldwin's sentencing. Later on the same day as the status conference, Baldwin's counsel sent

Baldwin a letter via Federal Express memorializing what had occurred in that conference.  See Government's Response to Order to Show Cause Ex. 2 (Crim. Doc. No. 578) ("Gov't's Resp. to 2003 OTSC").  The letter was delivered to Wyatt Correctional Facility, where Baldwin was incarcerated, on May 22.  In the letter, counsel informed Baldwin that he told the court that they would not be contesting the drug quantity, and that the court "was careful to point out that she doesn't want the impression to be that she has a closed mind on these issues, and that she [hadn't] heard what we might say."  Id.  Baldwin's counsel also told Baldwin in that letter that, "[i]f you have second thoughts about this strategy, you need to call me immediately."  Id.  Baldwin, on the other hand, claimed that he was not informed of the court's statements until after his sentencing occurred.  See Supplemental Mem. in Supp. at 3.

At the evidentiary hearing, Baldwin's counsel testified that, prior to sending Baldwin the May 21, 2002 letter via Federal Express, he had communicated with Baldwin on other occasions by sending letters to him via Federal Express.  According to Baldwin's counsel, Baldwin had never before reported to him any delays in receiving counsel's prior correspondence sent via Federal Express.  Counsel also testified that, at Wyatt Correctional Facility where Baldwin was incarcerated at the time of these events, the current practice is for all legal mail to be delivered to inmates within 24 hours of its receipt.  It is counsel's belief that this was likely also the policy at Wyatt in 2002.

Baldwin's testimony at the evidentiary hearing corroborates his counsel's testimony generally about the receipt of correspondence.  Baldwin testified that, over the course of the year-long period in which he was represented by counsel, his counsel had sent him many letters and Baldwin had never before had any issues relating to any

3

delays receiving such mail. He testified that he received prior mail sent to him by counsel promptly and within 24 hours of the date of delivery.

Further, at Baldwin's sentencing, counsel indicated that, in addition to the letter he sent Baldwin describing the events of the May 21 status conference, counsel had recounted those events to Baldwin, either in-person or over the phone, prior to sentencing. At the evidentiary hearing, counsel testified that he told Baldwin, at some time in between the status conference and the sentencing, what had occurred at the status conference. That said, counsel also testified that his work file does not reflect any record of this conversation, and he could not recall whether that conversation happened in person or over the phone. Further, in an Affidavit submitted to the court after the evidentiary hearing, counsel produced a log of his activity on the case, which included notations indicating the phone calls and meetings that counsel had with Baldwin that were logged by counsel. Indeed, this log does not contain a record of any in-person or telephonic communication between counsel and Baldwin in the time between the May 21 conference and the May 29 sentencing. See Supplement to Counsel's Affidavit (Doc. No. 21-2) ("Counsel's Aff."). Baldwin testified that he did not have any conversations with his counsel, either in-person or over the phone, between the May 21 conference and his sentencing.

B. Advising Baldwin about an appeal / filing an appeal

Counsel testified that it is his practice to discuss appeal rights with clients immediately after sentencing. Accordingly, he testified that he spoke with Baldwin about his appeal rights immediately following the conclusion of the sentencing proceeding. In addition to discussing Baldwin's appeal rights immediately following the

4

sentencing, counsel testified that he further discussed these rights over the telphone between the sentencing and the expiration of the period in which Baldwin could file an appeal. Counsel also sent Baldwin a letter, via Federal Expreess, on May 30, one day after the sentencing, in which he discussed the prudency of filing an appeal and reiterated that, ultimately, it was Baldwin's decision whether or not to file one. Gov't's Resp. to 2003 OTSC Ex. 3. Counsel also testified that at no time did Baldwin affirmatively instruct him to file a notice of appeal. Counsel testified that had Baldwin requested that he file an appeal, he would have, and that there would exist no reason why he would not file an appeal if a client had requested that he do so. On June 6, counsel sent Baldwin a letter in which he indicated that it was his understanding that Baldwin did not wish to file an appeal, and that Baldwin should contact him immediately if that belief was mistaken. Gov't's Resp. to 2003 OTSC Ex. 4. Baldwin received this letter on or about June 6, well within the 10-day period that Baldwin had to appeal, which began running on June 1. Nevertheless, he did not contact counsel to indicate that he would like to file an appeal.

Baldwin testified that he told counsel that he wanted to appeal in the conversation they had immediately following the conclusion of the sentencing proceeding. In that conversation, according to Baldwin's testimony, counsel discussed with him the grounds on which any potential appeal could stand, and ultimately concluded that it was his legal opinion that Baldwin did not possess convincing grounds for an appeal. Baldwin testified that he also told his counsel to file an appeal after reading counsel's letter dated May 21, which Baldwin claims he received on or about June 6.

Counsel continued to represent Baldwin, even after Baldwin received the June 6 letter and after the deadline for filing an appeal had passed.  See Counsel's Aff. ¶ 8. During this period – after Baldwin's receipt of the June 6 letter – Baldwin wrote a number of letters to counsel.  Id.  However, at no time did Baldwin mention an appeal or voice any disagreement with counsel regarding how counsel was handling his case.  Id.

### III.   LEGAL STANDARD

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. U.S., 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted). Relief under section 2255 of title 28 of the United States Code is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. U.S., 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks omitted).  Further, in a section 2255 motion, the petitioner bears the burden of proving he is entitled to relief by a preponderance of the evidence.  See Skaftouros v. U.S., 667 F.3d 144, 158 (2d Cir. 2011).

### IV.   DISCUSSION

#### A.   Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result."  Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  At the first step, "the

6

defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.  The Second Circuit has described the burden as "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Harrington, 689 F.3d at 129 (citations and internal quotation marks omitted).  "The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" Id. at 129-30 (quoting Harrington v. Richter, 562 U.S. 86, 88 (2011)).

To show the requisite prejudice at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

       1.    Ineffective Assistance Regarding Communication of the Court's Comments

Although Baldwin originally asserted that his counsel was ineffective in advising him to plead guilty in multiple respects, Baldwin's only remaining argument is that his counsel was ineffective because he failed to timely inform Baldwin of the court's comments at the May 21, 2002 status conference regarding drug quantity.

However, based on the entire record before the court, the court concludes that the steps Baldwin's counsel took to apprise Baldwin of the events that took place at the status conference were not objectively unreasonable.  As both Baldwin and his counsel testified at the evidentiary hearing, counsel regularly communicated with Baldwin by

sending him letters. This was not only an established practice between the two of them, but an effective one. Neither Baldwin nor his counsel had ever experienced any problems communicating through mailed letters prior to the alleged mishap concerning the May 21 letter.

Given this history of effective communication via correspondence sent using Federal Express, the court concludes that it was not objectively unreasonable for Baldwin's counsel to inform Baldwin of what occurred at the status conference by sending him a letter.

The court also credits counsel's testimony that, in addition to sending Baldwin a letter, he spoke with Baldwin between the May 21 conference and his sentencing, and conveyed to Baldwin what had occurred at the conference. The fact that this phone call or in-person meeting is not reflected in counsel's work file does not dissuade the court from crediting counsel's testimony on this point. This is because the work file is not complete. For example, the work file does not contain any record of a letter, dated June 6, being sent from counsel to the defendant. However, the court knows that the defendant received a letter dated June 6, because the defendant testified that he received that letter. Thus, it would be inaccurate to conclude that an event did not occur solely based on the fact that there is no record of the event in counsel's work file. This fact, combined with the fact that the court credits counsel's testimony, made both at Baldwin's sentencing and at the evidentiary hearing, that he had verbally recounted to Baldwin what had occurred at the May 21 conference, convinces the court that this conversation did, indeed, occur.

As a result, Baldwin's claim that his counsel was ineffective for failing to timely inform him of the court's comments made during the May 21 conference call fails to satisfy the first Strickland prong, because counsel's performance was not deficient – he communicated the court's comments to Baldwin in a timely manner through a letter and in conversation.

### 2. Ineffective Assistance Regarding Decision Not to Appeal

Baldwin also claims that his counsel was ineffective for failing to consult with him adequately regarding his right to appeal his sentence, and for failing to file a direct appeal. See Mot. to Vacate at 5.

The court addresses first Baldwin's claim that his counsel failed to file an appeal despite Baldwin's request for one, as that claim, if proven, will subsume the claim that his counsel failed to consult with him adequately regarding his appeal rights. Under the first Strickland prong, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). As for the second Strickland prong, in such cases the "denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice." Id. at 483.

The court credits counsel's testimony and does not credit Baldwin's testimony on this point. Specifically, the court credits counsel's testimony that at no time did Baldwin ever affirmatively instruct him to file an appeal – either immediately following the sentencing or when Baldwin received the June 6 letter, which he claims also included counsel's letters from May 21 and May 30. Counsel's testimony is buttressed by the fact that he continued to represent Baldwin after Baldwin received the June 6 letter and

yet at no time after Baldwin received the June 6 letter did he inform counsel that he thought he had told counsel to file an appeal, or that he was unhappy with how counsel had been handling the case.  Accordingly, because the court concludes that Baldwin did not affirmatively request that counsel file an appeal, counsel did not perform deficiently by failing to file one.

Baldwin also claims that his counsel was ineffective in failing to consult with him adequately as to his appeal rights.  When a defendant does not explicitly direct counsel to file an appeal, counsel's performance is only deficient if counsel failed to "consult" with the defendant about an appeal.  Flores-Ortega, 528 U.S. at 478.  To "consult" in this context means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id.  The record that existed before the court conducted the evidentiary hearing strongly supported the conclusion that Baldwin's counsel consulted with Baldwin within the meaning of the Supreme Court's definition of "consult."  On May 30, 2002, Baldwin's counsel sent Baldwin a letter discussing the advantages and disadvantages of filing an appeal.  See Gov't's Resp. to 2003 OTSC Ex. 3.  As already discussed, Baldwin received that letter with enough time to notify counsel if he wanted to appeal.  Further, in that letter Baldwin's counsel referenced a telephone call between himself and Baldwin in which, according to the letter, they discussed the same advantages and disadvantages memorialized in the letter.  See id.  At the evidentiary hearing, counsel testified that he did, indeed, discuss Baldwin's appeal rights over the telephone.  In that conversation, as well as in the May 30 letter, counsel discussed on what bases Baldwin

might appeal, the potential consequences of appealing, and whether counsel thought it advisable to appeal. The court credits counsel's testimony on this point.

Accordingly, the court concludes that counsel adequately consulted with Baldwin regarding his appeal rights. As such, Baldwin's claim that counsel was constitutionally ineffective for either not filing an appeal or for failing to adequately consult with Baldwin regarding his appeal rights fails to satisfy the first <u>Strickland</u> prong.

## IV.   CONCLUSION

For the foregoing reasons, the defendant's Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. No. 1) is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 15th day of October, 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
